UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUDY JACOBSON<br><br>                    Plaintiffs,<br><br>      -against-<br><br>CONFLICT INTERNATIONAL INC.,<br>ANDREW McLAREN, ~~JANE DOE,~~ and JOHN DOE,<br><br>                    Defendants. | **AMENDED COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. In the background of this case is a breakup between a powerful private investigations firm and one of its former executives. In the aftermath of that breakup, the private investigations firm engaged in a series of behaviors that were designed to harm its former executive, to undermine his new business, and to destroy its relationship with a client who had followed the executive to his new company. This case is about the harm suffered by that client, Trudy Jacobson. As a consequence of the defendants' behavior, her confidential information was maliciously leaked by the company, its agents, and then others, leading to disastrous consequences personally and financially. She brings the present action seeking monetary damages for the harms she has sustained and will continue to sustain because of the defendants' egregious behavior.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the claims in this action reflect a matter in controversy that exceeds $75,000, and the plaintiff is in complete diversity from the defendants.

3. In particular, while Trudy Jacobson ("Ms. Jacobson" or "Plaintiff") is a resident and citizen of the State of Kansas, Conflict International Inc. ("Conflict International") is a citizen

of the State of New York, and Andrew McLaren ("Mr. McLaren") is a citizen of the State of Tennessee.  On information and belief, ~~Jane Doe is a resident and citizen of the State of New York, and on information and belief~~ John Doe is either a resident and citizen of the United Kingdom or of the State of North Carolina.

4. Venue is proper in the Southern District of New York under, *inter alia*, 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the action occurred therein.

5. A jury trial is hereby demanded.

## PARTIES

6. Plaintiff Trudy Jacobson is a resident of the State of Kansas and was for a relevant time a client of Conflict International Inc., which is headquartered in New York.

7. Defendant Conflict International Inc. is a domestic corporation headquartered in the State of New York.

8. Defendant Andrew McLaren is on information and belief a resident of the State of Tennessee and, except as otherwise provided, was at all relevant times acting with the assent, for the benefit, and under the control of Conflict International.

9. Defendant John Doe was at all relevant times an agent of Conflict International, participated in the unauthorized leak of information described below and his identify has not yet been confirmed.

~~10.   Defendant Jane Doe was an additional participant in the leak of information described below.~~

## BACKGROUND

~~11.~~ 10.  Ms. Jacobson is a successful businessperson who in the winter of 2021 was in the market for a private investigator.

2

12.11. In the winter of 2021, Ms. Jacobson received public relations services from a service provider in New York named Victoria Pressley ("V.P.")with the initials V.P.

13.12. In the winter of 2021, Ms. Jacobson asked V.P. whether she could recommend a private investigator.

14.13. In the winter of 2021, V.P. recommended that Ms. Jacobson hire Mr. McLaren to perform private investigative functions.

15.14. V.P. had hired Mr. McLaren for private investigative services in the past.

16.15. Mr. McLaren performed certain investigative functions for Ms. Jacobson in or about the winter of 2021.

17.16. Pursuant to the private investigative services that Mr. McLaren performed for Ms. Jacobson, Mr. McLaren and Ms. Jacobson developed a friendship.

18.17. Pursuant to the friendship between Ms. Jacobson and Mr. McLaren, Mr. McLaren indicated that for future investigative needs Ms. Jacobson should consider working with a third-party, S.K.Stephen Komorek ("S.K."), who was associated with Conflict International.

18. On or about March 2, 2021, Ms. Jacobson, while in New York, New York, hired Conflict International to perform certain private investigative services (the "PI Contract").

[Formatted: Font: Bold, Underline]

19. The PI Contract was drafted exclusively by Conflict International—not Ms. Jacobson.

20. Pursuant to the PI Contract, Conflict International agreed that Ms. Jacobson's "engagement of Conflict International and all information relating to or arising out of [her] engagement [was] subject to the attorney-client privilege and attorney work product doctrine to the maximum extent allowed by law," and that her "relationship with Conflict International

3

w[ould] be confidential and privileged and all documents and communications related to [her] case w[ould] be treated as such" (the "Confidentiality Clauses").

21. Pursuant to the PI Contract, Ms. Jacobson ultimately paid $1.8 million to Conflict International.

22. In or about February 24 and February 25, 2022, S.K.'s relationship with Conflict International soured, resulting in his employment relationship with Conflict International ending on February 25, 2022.

23. In or about February 24 and February 25, 2022, Mr. McLaren, acting outside of his capacity as an agent of Conflict International, and V.P. initiated an attempt to procure funds to himself personally from Ms. Jacobson through the notion that they he—as opposed to Conflict International—were was entitled to a percentage of the proceeds she had paid to Conflict International.

23.24. In or about February 24 and February 25, 2022, V.P. initiated an attempt to procure funds from Ms. Jacobson through the notion that she was entitled to a percentage of the proceeds Ms. Jacobson had paid to Conflict International.

25. In attempting to procure funds from Ms. Jacobson, Mr. McLaren and V.P. made it known to Ms. Jacobson that they were aware of certain details of Conflict International's work for her that was supposed to have been kept confidential pursuant to the PI Contract. This included, *inter alia*: (a) the identity of a target of Ms. Jacobson's investigation in New York, New York; (b) the amount of money Ms. Jacobson had paid to Conflict International for purposes of investigating that target; and (c) the identities of the investigators who were working on the case (collectively, the "Unauthorized Disclosures").

4

26. Mr. McLaren was never identified to Ms. Jacobson as a formal employee of Conflict International, and he was not contemplated as a permissible disclosee in the PI Contract.

~~24.~~27. V.P. was never identified to Ms. Jacobson as a formal employee of Conflict International, and under the terms of the PI Contract Conflict International was not allowed to disclose Ms. Jacobson's confidential information to her.

~~25.~~28. In receipt of the Unauthorized Disclosures, Mr. McLaren informed the New York target of the investigation that indeed Ms. Jacobson was investigating him.

~~26.~~29. ~~In receipt of the Unauthorized Disclosures, Jane Doe informed the New York target of the investigation that indeed Ms. Jacobson was investigating him.~~ On information and belief, Conflict International and/or Mr. McLaren persuaded the target of the investigation to contact Ms. Jacobson's husband, and fed the target with information to include in such communication.

~~27.~~30. ~~In response to learning that Ms. Jacobson was investigating him, the target~~ The target of the investigation followed suit: he contacted Ms. Jacobson's husband and made defamatory and humiliating allegations about her and included contents that on information and belief had been fed to him as set forth above.

~~28.~~31. The Unauthorized Disclosures were made as part of an effort to undermine S.K.'s relationship with Ms. Jacobson.

~~29.~~32. As a consequence of the Unauthorized Disclosures, Ms. Jacobson suffered pecuniary and other damages, including, *inter alia*, increased investigative costs necessitated by the added complexity associated with the loss of confidentiality; additional legal fees necessary to address the wrongful pursuit of monies by Mr. McLaren and V.P.; and extreme emotional distress associated with the implication of other members of Ms. Jacobson's family.

~~30.~~33. Confidentiality went to the heart of Ms. Jacobson's decision to enter into the PI Contract, given that she is a reasonably public figure, the size of her expenditures were large, and the success of her investigative efforts was dependent in part upon the target's unawareness of the existence, scope and details of such efforts.

~~31.~~ The Unauthorized Disclosures were effectuated intentionally and maliciously, and were part of a campaign to harm S.K. and Ms. Jacobson's relationship with each other, a campaign that also included the sending of defamatory information to Ms. Jacobson about S.K.; illegally obtaining, or attempting to obtain, S.K.'s confidential medical records from his time serving in the United States Armed Forces; and filing false and defamatory allegations to the World Association of Detectives in an effort to undermine S.K.'s new business, to which Ms. Jacobson devoted her patronage.

## CAUSES OF ACTION

### FIRST:  BREACH OF CONTRACT
### As Against Conflict International

~~32.~~35. Plaintiff repeats all prior allegations as if set forth more fully herein.

~~33.~~36. Ms. Jacobson and Conflict International entered into an agreement—namely, the PI Contract.

~~34.~~37. Ms. Jacobson performed all of her obligations arising under the PI Contract, and in particular paid $1.8 million overall to Conflict International.

38.   Conflict International breached the PI Contract by virtue of the Unauthorized Disclosures, which violated the Confidentiality Clauses.

39.   As to Mr. McLaren, while he was an agent of Conflict International in certain capacities, including through his own tortious conduct described herein, he was not an employee of Conflict International more generally, and he was not acting as an agent of Conflict International when the company made the Unauthorized Disclosures to him.  That was the point: the Unauthorized Disclosures were issued to Mr. McLaren (and V.P.) precisely because they were not otherwise entitled to have the information protected by the Confidentiality Clauses.  Instead, the disclosures furthered the overall objective of harming Ms. Jacobson for her loyalty to one of its former executives, Mr. Komorek.

~~35.~~40. Alternatively, Mr. McLaren was an agent of Conflict International, and was in privity with Conflict International in connection with the PI Contract, and thus Conflict International breached the PI Contract by Mr. McLaren's making disclosures of the information protected by the Confidentiality Clauses to V.P. and the target of the investigation.

~~36.~~41. As a result of the breach, Ms. Jacobson suffered pecuniary and other damages, including, *inter alia*, increased investigative costs necessitated by the added complexity associated with the loss of confidentiality; additional legal fees necessary to address the wrongful pursuit of monies by Mr. McLaren and V.P., which was triggered by their receipt of information concerning the scope of Ms. Jacobson's payments to Conflict International; and extreme emotional distress associated with the implication of other members of Ms. Jacobson's family, which was proximately caused by the divulgence of the identify of the target of the investigation.

~~37.~~42. The breach was intentional and malicious, and resulted from Conflict International's campaign to seek retribution against S.K. for leaving the company and against Ms. Jacobson for demonstrating loyalty to S.K.

~~38.~~43. Ms. Jacobson is entitled to compensatory and punitive damages arising out of the breach; or, alternatively, she is entitled to rescission of the contract, and repayment of all of her fees.

~~**SECOND: NEGLIGENCE**~~
~~**As Against John Doe and Andrew McLaren**~~

~~39.     Plaintiff repeats all prior allegations as if set forth more fully herein.~~

~~40.     John Doe was at all relevant times an employee, officer and agent of Conflict International, working with its assent, for its benefit and under its control.~~

~~41.     Andrew McLaren was at all relevant times an agent of Conflict International, working with its assent, for its benefit and under its control.~~

~~42.     In their capacities as Conflict International agents, John Doe and Mr. McLaren became aware of confidential information concerning investigative services commissioned by Ms. Jacobson.~~

43. ~~John Doe and Mr. McLaren owed a duty of reasonable care to Ms. Jacobson, to exercise the level of care that a reasonably prudent person would show under the circumstances of a private investigative relationship with a client.~~

44. ~~John Doe and Mr. McLaren breached their duty of care to Ms. Jacobson by making Unauthorized Disclosures to V.P. in the State of New York.~~

45. ~~The damages to Ms. Jacobson arising out of the Unauthorized Disclosures, including her pecuniary damages and emotional distress, were reasonably foreseeable to John Doe and Mr. McLaren.~~

46. ~~But for John Doe and Mr. McLaren's breaches, Ms. Jacobson would not have sustained the pecuniary and emotional injuries in issue.~~

47. ~~Ms. Jacobson is entitled to all compensatory and punitive damages available at law arising out of John Doe and Mr. McLaren's negligence.~~

### ~~THIRD: NEGLIGENCE~~
### ~~As Against Jane Doe and Andrew McLaren~~

48. ~~Plaintiff repeats all prior allegations as if set forth more fully herein.~~

49. ~~Jane Doe and Mr. McLaren became aware of confidential information concerning investigative services commissioned by Ms. Jacobson.~~

50. ~~Jane Doe and Mr. McLaren owed a duty of reasonable care to Ms. Jacobson, to exercise the level of care commensurate with a reasonably prudent person under the circumstances.~~

51. ~~Jane Doe and Mr. McLaren breached their duty of care to Ms. Jacobson by making Unauthorized Disclosures to the New York target of the investigation that Ms. Jacobson had commissioned.~~

52. The damages to Ms. Jacobson arising out of the Unauthorized Disclosures, including her pecuniary damages and emotional distress, were reasonably foreseeable to Jane Doe and Mr. McLaren.

53. Ms. Jacobson suffered pecuniary and emotional damages that she would not have otherwise suffered but for the breaches by Jane Doe and Mr. McLaren.

54. Ms. Jacobson is entitled to all compensatory and punitive damages available at law arising out of Jane Doe and Mr. McLaren's negligence

### ~~FOURTH~~SECOND:  TORTIOUS INTERFERENCE WITH CONTRACT
### As Against John Doe and Andrew McLaren

~~55.~~44.  Plaintiff repeats all prior allegations as if set forth more fully herein.

~~56.~~45.  Ms. Jacobson and Conflict International entered into a contract, namely, the PI Contract.

~~57.~~46.  John Doe and Mr. McLaren were aware of the PI Contract.  In particular, John Doe was an employee of Conflict International, and Mr. McLaren had been the moving force behind Ms. Jacobson's decision to retain Conflict International.

~~58.~~47.  John Doe and Mr. McLaren intentionally induced Conflict International to breach the PI Contract through the Unauthorized Disclosures.

48.  John Doe and Mr. McLaren acted at all relevant times with intent and malice, inducing the Unauthorized Disclosures as part of an attempt to penalize ~~S.K. for leaving Conflict International and to harm~~ Ms. Jacobson for her loyalty to S.K.

~~59.~~49.  John Doe and Mr. McLaren acted at all relevant times in bad faith, committing predatory acts against Ms. Jacobson and S.K.

10

60.50.  Ms. Jacobson has suffered pecuniary and emotional damages as a consequence of the defendants' conduct, including loss of the value of her bargain, increased investigative costs, attorneys' fees, and emotional distress.

11

**WHEREFORE**, Plaintiff prays for relief as follows:

    A.    That the Court award compensatory damages to Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial;

    B.    That the Court award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

    C.    That the Court award attorney's fees, costs and disbursements;

    D.    For a trial by jury;

    E.    For a pre-judgment and post-judgment interest and recovery of their costs; and

    F.    For any and all other relief to which they may be entitled.

Dated: Garden City, New York
       ~~November 29, 2022~~February 27, 2023

                    **BARKET EPSTEIN KEARON
                    ALDEA & LOTURCO, LLP**

                By:    /s/ _____
                      Alexander Klein, Esq.
                      Kevin Kearon, Esq.
                      666 Old Country Road, Suite 700
                      Garden City, New York 11530