UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUDY JACOBSON

                Plaintiffs,

  -against-

CONFLICT INTERNATIONAL INC.,
ANDREW McLAREN, and JOHN DOE,

                Defendants.

Case No. 22-CV-10177 (ER)

# MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION TO DISMISS

**BARKET EPSTEIN KEARON ALDEA**
**& LOTURCO, LLP**
666 Old Country Road, Suite 700
Garden City, New York 11530
(516) 745-1500

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

STANDARD ........................................................................................................................... 4

ARGUMENT .......................................................................................................................... 4

    I.    DEFENDANTS' MOTION TO DISMISS THE BREACH OF
        CONTRACT CLAIM SHOULD BE DENIED ....................................................... 4

        A. Ms. Jacobson Has Stated Her Claim For Damages .......................................... 5

        B. The Purported Documentary Evidence Does Not Warrant Dismissal.............. 7

            1. Defendants' resort to the email in question was not appropriate given the
               structure of Ms. Jacobson's pleadings ....................................................... 7

            2. The documentary evidence does not warrant dismissal............................. 9

        C. Conflict International Was Not Permitted to Disclose Confidential
           Information to Defendant McLaren ................................................................ 11

        D. Ms. Jacobson Has Stated A Claim For The Unauthorized Disclosure Of
           Confidential Information To V.P. ................................................................... 13

    II.   DEFENDANTS' MOTION TO DISMISS THE TORTIOUS
        INTERFERENCE CLAIM SHOULD BE DENIED .......................................... 15

CONCLUSION..................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*360 N. Rodeo Drive LP v. Wells Fargo Bank, Nat'l Ass'n*,
    2023 WL 2574180 (S.D.N.Y. 2023) .................................................................................... 4

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010) ................................................................................................ 10

*Epstein v. NYC Council of Carpenters Benefit Funds*,
    2016 WL 1718262 (S.D.N.Y. 2016) .................................................................................... 7

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Rsch.*,
    2016 WL 205445 (S.D.N.Y. 2016) ................................................................................. 5, 6

*FDIC v. U.S. Mort. Corp.*,
    132 F. Supp.3d 369 (E.D.N.Y. 2015) ................................................................................ 10

*Gencarelli v. Cablevision Sys. Corp.*,
    2012 WL 1031441 (E.D.N.Y. 2012) .................................................................................. 11

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
    252 F.3d 608 (2d Cir. 2001) ............................................................................................... 12

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*,
    357 F.3d 900 (9th Cir. 2004) ................................................................................................ 2

*Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Sohne A.G.*,
    784 F.3d 78 (2d Cir. 2015) ................................................................................................... 5

*Maniolos v. United States*,
    741 F. Supp.2d 555 (S.D.N.Y. 2010) ................................................................................ 12

*Paulemon v. Tobin*,
    30 F.3d 307 (2d Cir. 1994) ................................................................................................. 11

*Pittman v. Frazer*,
    129 F.3d 983 (8th Cir. 1997) ................................................................................................ 2

*Pyskaty v. Wide World of Cars, LLC*,
    856 F.3d 216 (2d Cir. 2017) ................................................................................................. 6

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ................................................................................................. 9

*Spa World Corp. v. Lipschik*,
    2010 WL 11632681 (E.D.N.Y. 2010) .................................................................................. 6

*United States ex rel. Foreman v. AECOM*,
    19 F.4th 85 (2d Cir. 2021) .................................................................................................... 8

*United States v. Kovel,*
    296 F.2d 918 (2d Cir. 1961) ................................................................................................. 2

*Vogelfang v. Capra*,
    889 F. Supp.2d 489 (S.D.N.Y. 2012) .............................................................................. 10

*Williams v. Time Warner Inc.*,
    440 F. Appx 7 (2d Cir. 2011) ............................................................................................ 8

**Statutes**

Fed. R. Civ. P.  8(a) ........................................................................................................ 6
Fed. R. Civ. P. 12(b)(6) ............................................................................................ passim

## INTRODUCTION

In the background of this case is a breakup between a powerful private investigations firm and one of its former executives. In the aftermath of that breakup, the private investigations firm engaged in a series of behaviors that were designed to harm its former executive, to undermine his new business, and to destroy its relationship with a client who had followed the executive to his new company. This case is about the harm suffered by that client, Trudy Jacobson. As a consequence of the defendants' behavior, her confidential information was maliciously leaked by the company, its agents, and then others, leading to disastrous consequences personally and financially. She brings the present action seeking monetary damages (or rescission) for the harms she has sustained and will continue to sustain because of the defendants' egregious behavior.

The Defendants have now moved to dismiss the case, arguing that Ms. Jacobson does not state a claim for breach of contract or tortious interference with contract. However, their argument rests upon a misconstruction of the parties' contract, the pleadings, and the propriety of documentary evidence here on a motion arising under Rule 12(b)(6). For the reasons set forth below, the motion should be denied.

## BACKGROUND

Ms. Jacobson is a successful businessperson who in the winter of 2021 was in the market for a private investigator. *See* Docket Entry 31 (the "Amended Complaint"), at ¶10. At the time, she worked with a publicist whose initials are V.P., and she thus asked V.P. whether she could recommend an investigator's services. *Id*. at ¶¶11-12. V.P. recommended a gentleman by the name of Andrew McLaren ("Defendant McLaren"). *Id*. at ¶13.

Thereafter, Ms. Jacobson hired Defendant McLaren to help her with her private investigation needs—but only to a point. After Defendant McLaren performed work for her, he

1

ultimately indicated that his assistance had run its course and that he would instead refer Ms. Jacobson to another provider. *Id*. at ¶¶16-17. That provider was Stephen Komorek, an agent of the company Conflict International Inc. ("Conflict International"). *Id*. Ms. Jacobson hired Conflict International on or about March 2, 2021. *Id*. at ¶18.

Ms. Jacobson's agreement with Conflict International contained one particularly relevant provision. In a provision labeled "Confidentiality" drafted by Conflict International and on its letterhead, the agreement stated the following:

> It is understood that your engagement of Conflict International and all information relating to or arising out of your engagement is subject to the attorney-client privilege and attorney work product doctrine to the maximum extent allowed by law. Without limiting the generality of the foregoing, the parties intend the engagement to fall within the principles enunciated in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961), In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management), 357 F.3d 900 (9th Cir. 2004), and Pittman v. Frazer, 129 F.3d 983 (8th Cir. 1997), and their progeny. It is also understood that your relationship with Conflict International will be confidential and privileged and all documents and communications related to your case will be treated as such.

*See* Docket Entry 34-1, Ex. A to Defendants' Memorandum of Law.

Pursuant to this agreement, Ms. Jacobson ultimately paid $1.8 million to Conflict International.

Beginning in December of 2021 and into the beginning of 2022, Mr. Komorek's relationship with Conflict International substantially soured. Thus Mr. Komorek's relationship with Conflict International terminated on February 25, 2022. *See* Amended Complaint at ¶22. Leading up to this time, it became increasingly clear that Ms. Jacobson would devote her loyalty to Mr. Komorek rather than to Conflict International, which sparked a campaign of vengeance. One expression of this campaign was the leaking of Ms. Jacobson's confidential information to

various third-parties in an effort to complicate her professional relationship with Mr. Komorek, to undermine investigative efforts on her behalf, and to cause her emotional damage. *Id*. at ¶¶32-34. Thus her information was leaked to, *inter alia*, Defendant McLaren; it was leaked to Ms. Jacobson's publicist, V.P; and it was leaked to the target of the investigation in issue. *Id*. at ¶¶25, 28-30. These leaks caused her increased investigative costs, because they complicated the nature of the investigation; they caused her legal fees, because the leaks to Defendant McLaren and V.P. triggered additional harassment from them; and they caused her severe emotional distress, as they ultimately culminated in communications made between the target of the investigation and her husband. *Id*. at ¶32. What is more, the leaks undermined a fundamental purpose of the investigation-agreement, which was to maintain confidentiality. *Id*. at ¶33.

As the divorce between Mr. Komorek and Conflict International bubbled over, agents of Conflict International, on information and belief, contacted the investigation's target for the express purpose of helping him craft a communication (or communications) to Ms. Jacobson's husband—which he subsequently did. *Id*. at ¶¶28-30.

On November 30, 2011, Ms. Jacobson brought the present lawsuit seeking damages or rescission arising out of the breach of contract (and tortious interference with contract) marked by the unauthorized disclosures. She filed an amended complaint on February 28, 2023. And on March 28, 2023, the Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Ms. Jacobson requests that the Defendants' motion be denied.

**STANDARD**

"To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to show more than a 'mere possibility' that a defendant has acted unlawfully." *See, e.g. 360 N. Rodeo Drive LP v. Wells Fargo Bank, Nat'l Ass'n*, 2023 WL 2574180, at *3 (S.D.N.Y. 2023) (internal references omitted). However, this "flexible plausibility standard is not a heightened pleading standard, and a complaint does not need detailed factual allegations to survive a motion to dismiss." *Id.* (internal quotations, references and ellipses omitted). "The question on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (internal quotations omitted).

**ARGUMENT**

**I.   DEFENDANTS' MOTION TO DISMISS THE BREACH OF CONTRACT CLAIM SHOULD BE DENIED.**

On or about March 2, 2021, Ms. Jacobson entered into an agreement with Conflict International that included among its material terms that "your relationship with Conflict International will be confidential and privileged and all documents and communications related to your case will be treated as such." *See* Def. Ex. A at 4. Thereafter, Conflict International divulged its relationship with Ms. Jacobson to a series of third-parties, including the target of its investigation, to non-employee Andrew McLaren, and to V.P. These disclosures included information related to whom Ms. Jacobson had hired Conflict International to investigate, the amount of money she had paid for that investigation, and the identities of the investigators performing work for her. *See* Amended Complaint at ¶¶25-28. She brought the present action seeking damages for the breach of this confidentiality provision.

4

The Defendants seek dismissal of the breach of contract claim because, they say, (a) her damages allegations are conclusory, (b) documentary evidence shows that Ms. Jacobson was responsible for her own damages, and (c) it was entitled to disclose Ms. Jacobson's confidential information to defendant McLaren because he was a Conflict International agent, and (d) Ms. Jacobson has failed to state a claim regarding unauthorized disclosures to V.P. *See* Defendants' Memorandum of Law ("Def. Memo") at 4-9.

These arguments rest upon a mistaken view of the pleadings and the standard governing documentary evidence at this pre-answer stage. For these reasons, set forth more fully below, we respectfully request that the Defendants' motion to dismiss the breach of contract claim be denied.

**A. Ms. Jacobson Has Stated Her Claim For Damages.**

"Although a plaintiff must plead factual content that allows the court to draw the reasonable inference that [s]he suffered damages as a result of the breach, it need not, at this stage, specify the measure of damages nor plead specific proof of causation." *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Rsch.*, 2016 WL 205445, at *7 (S.D.N.Y. 2016) (internal quotations, references and brackets omitted). This principle of federal pleadings emerges from the fact that "speculative" allegations of damages survive pre-answer dismissal, because a breach of contract claim under New York law is available even when damages are nominal. *See, e.g., Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Sohne A.G.*, 784 F.3d 78, 87 (2d Cir. 2015) (reversing dismissal of breach of contract claims, because "even if Luitpold's allegations of substantial damages were, as Defendants argue, too 'speculative' to support its claims, Luitpold would have plausible claims for nominal damages").

This is all to say, attempts to mitigate damages through factual causation-claims are not the province of pre-discovery motion practice. Instead, where the "plaintiff's complaint alleges the existence of a[] … contract…; defendant's breach and damages," "plaintiff has alleged enough to satisfy FRCP 8(a) and is entitled to attempt to prove [her] claim." *Spa World Corp. v. Lipschik*, 2010 WL 11632681, at *6 (E.D.N.Y. 2010).

Glossing over these principles, the defense argues that dismissal is warranted because Ms. Jacobson "does not demonstrate how defendant's alleged breach …caused plaintiff any injury." *See* Def. Memo at 9 (adding, that she fails to identify how the "confidential information was wrongfully disclosed let alone *when* or *how* it was shared"). But as a matter of federal law Ms. Jacobson is "not required to plead specific proof of causation," *Errant Gene Therapeutics*, at *7, blunting this argument's force. It is also factually incorrect, as Ms. Jacobson amply alleges that her damages were plausible outgrowths of the Defendants' disclosures. For instance, she alleges, among other things, that the disclosures increased the complexity of the investigation she was funding and led third-parties to accost her for money upon learning how much she had paid for the investigation, triggering legal fees. *See* Amended Complaint at ¶¶32-33. She is "entitled to attempt to prove [her] claim." *Spa World Corp.*, at *6.

The defense's argument also ignores the alternative remedy sought in Ms. Jacobson's pleadings: rescission. *See* Amended Complaint at ¶43. "Under New York law, a plaintiff may obtain rescission … when a breach of contract is either material and willful or so substantial and fundamental that it strongly tends to defeat the purpose of the contract." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (internal quotations omitted). This remedy is available where "damages would not be a complete and adequate remedy and the status quo may be substantially restored by equitable relief." *Id*. (internal quotations omitted). Here, Ms. Jacobson

6

has described how Defendants' behavior defeated the purpose of the contract, as confidentiality went to the "heart" of her decision to hire Conflict International in the first place. *See* Amended Complaint at ¶33. And she has alleged that the pattern of disclosures was a willful and malicious attempt to penalize her and others after an ugly breakup between Conflict International and one of its former executives. *See* Amended Complaint at ¶34. Thus, if contract damages were truly mitigated to the extent the Defendants claim they should be, this would not warrant dismissal; it would reinforce the proposition that such damages are not a "complete and adequate remedy" under the circumstances—warranting the intervention of the Court's equitable rescission powers. In either case, the application to dismiss the breach of contract claim should be denied.

**B. The Purported Documentary Evidence Does Not Warrant Dismissal.**

The defense argues that Ms. Jacobson's breach of contract claim should be dismissed because documentary evidence in the form of an alleged e-mail proves an "obvious alternative explanation for the injury that she purportedly suffered." *See* Def. Memo at 4. This argument glosses over two subsidiary issues—namely, whether resort to this e-mail is appropriate on a pre-answer motion to dismiss in the first place; and whether, if so, documentary evidence of this nature may trigger dismissal in the face of contrary factual allegations. The answer to both questions is 'no,' and thus the Defendants' application for dismissal should be denied.

   **1. Defendants' resort to the e-mail in question was not appropriate given the structure of Ms. Jacobson's pleadings.**

As a baseline rule, "[i]n considering a Rule 12(b)(6) motion, the court is normally required to look only to the allegations on the face of the complaint"—which the contents of the third-party email plainly were not. *See, e.g., Epstein v. NYC Council of Carpenters Benefit Funds*, 2016 WL 1718262, at *2 (S.D.N.Y. 2016) (internal references omitted). Nevertheless, courts may consider

7

documents beyond the four corners of a complaint when those "[d]ocuments … are attached to the complaint…[,] incorporated in it by reference," or are documents upon which the complaint "*solely* relies and which [are] *integral to the complaint*…." *Id*. (internal references omitted) (emphasis in original).  But none of these exceptions applies here.

Clearly, the e-mail is not "attached to the complaint."  Moreover, the e-mail is also not "incorporated" into the complaint.  As a matter of law, a "mere passing reference or even references … to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 F. Appx 7, 9 (2d Cir. 2011).  And here the complaint scarcely mentions the communication in issue—never once identifying the communication in issue as an e-mail; making a direct claim of a communication with Ms. Jacobson's husband in only one allegation (*see* Amended Complaint at ¶30); and describing a breach of contract claim that can stand entirely independent of the communication with Ms. Jacobson's husband, as by that time the confidentiality had already been breached.  *See id*. at ¶28.  Such a "passing reference" does not equate to "incorporation" for purposes of 12(b)(6).

Finally, Ms. Jacobson's complaint neither "solely" relies upon this e-mail nor is it "integral" to her allegations.  This category of acceptable documentary evidence comprises a "narrow set of circumstances," after all, focusing on cases where the plaintiff "relies heavily on the document's terms and effect in pleading h[er] claims…." *United States ex rel. Foreman v. AECOM*, 19 F.4ᵗʰ 85, 107-08 (2d Cir. 2021).  Yet that scenario is distant from the structure of the pleadings here, which can make out the essential elements of the claims in issue without resort to this e-mail at all.

8

Accordingly, the Defendants' heavy reliance upon this documentary evidence is self-defeating, because this documentary evidence is not an appropriate consideration for a motion based upon the sufficiency of the pleadings in the first place. The motion should thus be denied.

### 2. The Documentary Evidence Does Not Warrant Dismissal.

Even if the documentary evidence could be considered, it still would not warrant dismissal. The thrust of the Defendants' argument is that the contents of an e-mail to Ms. Jacobson's husband prove that she herself was responsible for leaking confidential information to the investigation's target. *See* Def. Memo at 5-6 (narrating how the target allegedly discovered he was being investigated). Thus, the defense reasons, this documentary evidence proves that her pleadings are false insofar as they allege that Conflict International is responsible for her damages. *Id*.

The Defendants' argument suffers two fundamental problems. First, it relies upon the false proposition that "*if a plaintiff's allegations are contradicted by a document considered in determining* a Rule 12(b)(6) motion, *those allegations are insufficient to defeat the motion*"—a "proposition that … [is] not applicable to the present case." *Roth v. Jennings*, 489 F.3d 499, 510-11 (2d Cir. 2007) (italics in original). At the pre-answer stage, documentary evidence may be used to thwart factual allegations in the complaint in extremely limited circumstances—like where a "plaintiff claimed that a general release he had signed was without consideration, whereas the signed release itself recited the consideration he received." *Id*. That is, documentary evidence may control over factual pleadings "where a plaintiff has alleged that the document contains, or does not contain, certain statements"; but contrary to relying upon documentary evidence to simply prove "what" it contains, it may not be used on 12(b)(6) "to prove the truth of [its] contents." *Id*.

9

(internal quotations omitted).  *See also Vogelfang v. Capra*, 889 F. Supp.2d 489, 512 (S.D.N.Y. 2012) ("documentary evidence does not trump a plaintiff's contrary factual allegations").

Here, the defense plainly flouts this principle in relying upon the truth of the e-mail's contents in its request to avoid discovery.  *See* Def. Memo at 5 (making representations about, for example, "how we discovered who [the private investigator] was"; claiming that "Trudy was … talking to the private investigators … and sent me the text"; describing how an investigator allegedly appeared to him when the target mentioned Ms. Jacobson's name; and alleging that he had "no other people in [his] life that would care to follow" him).  Indeed, the entire purpose of supplying the e-mail here is to suggest that the target figured out the nature of the investigation on his own—an inference that is not possible without accepting the truth of his e-mail's contents.

Lost in the Defendants' analysis on this point is the factual dispute concerning this e-mail's provenance—the second fundamental shortcoming of the Defendants' argument.  As a matter of law, "in order to consider documentary evidence on a motion to dismiss, it must be clear on the record that *no* dispute exists regarding the authenticity or accuracy of the document."  *FDIC v. U.S. Mort. Corp.*, 132 F. Supp.3d 369, 381 (E.D.N.Y. 2015) (internal quotations omitted; italics in original).  *See also DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  Yet here Ms. Jacobson has alleged that the contents of the target's communication(s) with her husband were fed to him by agents of Conflict International.  *See* Amended Complaint at ¶29.  While we anticipate that discovery would shed light on this question, one notable quality about the e-mail is how well written, organized and structured it is—as though it were written by someone with training.  The prospect of this type of assistance or prodding from the Defendants would of course undermine the evidentiary value for which the e-mail is offered.  Yet it is precisely that type of involvement from the Defendants that cannot be adjudicated on the pleadings.

10

### C. Conflict International Was Not Permitted to Disclose Confidential Information to Defendant McLaren.

Rather than denying that it shared Ms. Jacobson's confidential information with defendant McLaren, Conflict International argues that under the terms of its contract with Ms. Jacobson it was allowed to make these disclosures because McLaren "was a Conflict employee and contractor." *See* Def. Memo at 7. However, this argument improperly relies upon disputed questions of fact and erroneously construes the parties' contract.

First, the notion that defendant McLaren "was a Conflict employee" is at odds with Ms. Jacobson's pleadings, which allege that he was not formally employed by the company during the relevant time period—an allegation that at this stage is presumed to be true. *See, e.g.,* Amended Complaint at ¶¶39 ("while he was an agent of Conflict International in certain capacities …, he was not an employee of Conflict International more generally, and he was not acting as an agent of Conflict International when the company made the Unauthorized Disclosures to him"), ¶8 (describing defendant McLaren as an agent of Conflict International "except as otherwise provided"). *See also Paulemon v. Tobin*, 30 F.3d 307, 308 (2d Cir. 1994) ("This Court is to presume all material factual allegations in the complaint to be true and must construe all reasonable inferences in a light most favorable to the plaintiff"); *Gencarelli v. Cablevision Sys. Corp.*, 2012 WL 1031441, at *3 (E.D.N.Y. 2012) ("assuming the facts are true as set forth in plaintiff's amended complaint, it is presumed that plaintiff was hired as an at will employee….") (internal brackets omitted). This point is in part corroborated by the Defendants' opposition papers, which paradoxically refer to him as not just an employee but a "contractor." *See* Def. Memo at 7. Discovery can help identify the true nature of defendant McLaren's relationship to Conflict International at the moment that Conflict International made the disclosures to him of Ms.

11

Jacobson's confidential information. But Rule 12(b)(6) may not be used to circumvent that process by assuming the truth of factual allegations by the movant.

Second, the Defendants' analysis of the contract with Ms. Jacobson is legally erroneous. "[W]hen the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b)(6) motion." *Maniolos v. United States*, 741 F. Supp.2d 555, 567 (S.D.N.Y. 2010) (internal quotations omitted). Yet here, even rose-colored glasses would not read the service contract with Ms. Jacobson to permit disclosure to a non-employee contractor *unambiguously*. To the contrary, the agreement never mentions the words 'contractor' or 'employee"; it says that Ms. Jacobson's relationship with "Conflict International" will be "confidential," without defining either term; and, ultimately, this terminology will be construed against Conflict International, because it was Conflict International who drafted the language. *See, e.g., Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001) (describing the "*contra proferentem* rule"). *See also* Ex. A to Def. Memo (printing the Conflict International Logo on the top right corner of every page). There is little credence to the notion that such undefined terms, construed against the drafter, permitted disclosures to defendant McLaren unambiguously—as dismissal would require.

To the contrary, Ms. Jacobson's pleadings explain why the agreement does not contemplate such a disclosure to him. She had known Defendant McLaren before she knew anybody at Conflict International, and it was McLaren who recommended that she hire Conflict International instead of him for future work—which would make little sense if he had been their employee. *See* Amended Complaint at ¶¶15-17. Ms. Jacobson also describes how Defendant McLaren pursued her for, essentially, a referral fee percentage of the funds she had paid Conflict International for investigative work. *Id.* at ¶23. Again, this pursuit would be peculiar if he had been employed by

12

Conflict International at that time. And she alleges that in all her dealings with Conflict International, and despite substantial payments to the firm, Defendant McLaren was "never identified to [her] as a formal employee," and "he was not contemplated as a permissible disclosee in the PI Contract." *Id*. at ¶26.

Ultimately, the intended scope of the confidentiality provision can be illuminated during the course of discovery. But it cannot be resolved on the pleadings alone. For this reason, the claim that disclosures made from Conflict International to Defendant McLaren represent breaches of the confidentiality provision should be sustained through the pleadings.

### D. Ms. Jacobson Has Stated a Claim For the Unauthorized Disclosure of Confidential Information to V.P.

Finally, if it were true that Defendant McLaren were a Conflict International insider for purposes of the disclosures to him, this would simply activate an alternative theory of the company's breach of contract. That is, if McLaren himself were an agent of Conflict International, then a breach of the confidentiality provision would be reflected by his disclosures to non-party V.P. *See* Amended Complaint at ¶40.

Nevertheless, the defense argues that the disclosures made to V.P. should be ejected from the litigation because the allegations in that regard "make little sense." *See* Def. Memo at 7. "Only conclusory allegations are made regarding V.P.'s knowledge causing Plaintiff pecuniary damages and emotional distress," they say, and Plaintiff "fails to allege what the nature of the disclosures were or that they were somehow different than those that Jacobson had already made to V.P." *Id*. Indeed, they argue, Ms. Jacobson only became acquainted with the private investigator scene on the recommendation of V.P., so the allegations regarding V.P. amount to her becoming "aware of

13

details of the investigation that V.P. received directly from Plaintiff herself." *See* Def. Memo at 8.

The logic of the Defendants' argument crumbles under a review of the pleadings. Ms. Jacobson specifically alleges that Defendant McLaren disclosed to V.P. the information protected by the Confidentiality Clauses in issue (Amended Complaint at ¶40), and that she thus demonstrated an awareness of Ms. Jacobson's confidential information—including "the identity of a target of Ms. Jacobson's investigation in New York, New York; … the amount of money Ms. Jacobson had paid to Conflict International …; and … the identities of the investigators who were working on the case…." *See* Amended Complaint at ¶25. One consequence of these disclosures, Ms. Jacobson pleads, is that V.P. accosted her for money under a theory that she was entitled to a referral fee percentage of what Ms. Jacobson had paid Conflict International—triggering legal costs to address her. *Id*. at ¶¶23, 32. Another consequence is that it undermined the "heart" of the agreement in the first place, which was to exchange payment for an investigation that, given her stature, would be kept private. *See* Amended Complaint ¶33.

Despite the Defendants' pressing, none of these allegations lead to the notion that V.P. became aware of details that "Plaintiff herself" had given her. *See* Def. Memo at 8. Ms. Jacobson's complaint does not allege that she told V.P. whom she was investigating, what she was paying for that investigation, or what the identities of the individual investigators at Conflict International were. It alleges that she simply "asked V.P. whether she could recommend a private investigator" and that V.P. "recommended … Mr. McLaren," who subsequently referred her to Stephen Komorek and Conflict International. *See* Amended Complaint at ¶¶12, 13, 17.

Just as a referral to an attorney does not equate to the referring party having access to attorney-client communications, V.P.'s referral of Ms. Jacobson to a certain investigator does not

14

equate to her having knowledge of the confidential information governing that relationship. The Defendants' motion to dismiss the V.P. disclosures from this action should be denied.

## II. DEFENDANTS' MOTION TO DISMISS THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DENIED.

The defense posits that the tortious interference claim fails because McLaren was not a "stranger" to the contract with Ms. Jacobson. *See* Def. Memo at 11. To that end, the Defendants argue that the tortious interference claim is barred by Ms. Jacobson's own pleadings, because she alleges that "Defendant McLaren is on information and belief a resident of the state of Tennessee and … was at all relevant times acting with the assent, for the benefit, and under the control of Conflict International." *See* Def. Memo at 11-12 (ellipses in original).

The problem lies in what the Defendants glossed over in the referenced pleadings: through their use of ellipses, they omitted the phrase, "except as otherwise provided." *See* Amended Complaint at ¶8. And Ms. Jacobson's pleadings specifically account for that carveout, alleging that Defendant McLaren was *not* acting as a Conflict International agent when he was given the disclosures of Ms. Jacobson's confidential information. *See* Amended Complaint at ¶39. *See also id*. at ¶44 (incorporating all prior allegations into the tortious interference claim). While presumed true at this stage, this allegation is buttressed by the fact that Defendant McLaren had explicitly referred her to a different set of investigators (*id*. at ¶17)—which, as expressed *supra*, would be gratuitous if he were already an agent of those same people.

Because the sole basis for Defendants' motion to dismiss this claim is the alleged agency relationship between Defendant McLaren and Conflict International during the relevant time period, and because that agency relationship presents a question of fact disputed by Ms. Jacobson's pleadings, the application to dismiss this cause of action should be denied.

15

## CONCLUSION

For these reasons, we respectfully request that the Defendants' motion for pre-answer dismissal be DENIED.

Dated: Garden City, New York
April 19, 2023

**BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP**

By: _____*/s/ Alexander Klein*_____
Alexander Klein, Esq.
Kevin Kearon, Esq.
666 Old Country Road, Suite 700
Garden City, New York 11530