UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUDY JACOBSON,

                Plaintiff,

– against –

CONFLICT INTERNATIONAL, INC.,
ANDREW McLAREN, *and* JOHN DOE,

                Defendants.

**OPINION & ORDER**

22-cv-10177 (ER)

RAMOS, D.J.:

    Trudy Jacobson brought this lawsuit against Conflict International, Inc. ("Conflict"), Andrew McLaren, and John Doe.  The action arises from alleged breaches of a contract for private investigative services that Jacobson and Conflict entered into on March 2, 2021 (the "Contract").  Jacobson seeks compensatory and punitive damages or rescission of the Contract.  She also alleges that McLaren and Doe—an unidentified Conflict employee—tortiously interfered with the Contract by inducing Conflict to commit the breach.  Defendants have moved to dismiss the amended complaint for failure to state a claim.  For the reasons set forth below, the motion is DENIED.

**I.    BACKGROUND**

    The facts recited herein are taken from the allegations in the amended complaint, Doc. 31, which the Court accepts as true on this motion.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court also considers the Contract, Doc. 34-1, which is both integral to and incorporated by reference in the amended complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

    **A.  Factual Background**

    Conflict is a private corporation, headquartered in New York, that performs private investigative services.  Doc. 31 ¶¶ 7, 18.  McLaren is a Tennessee resident who performs private investigative services. *Id.* ¶¶ 8, 15–16.  The amended complaint alleges

that, "except as otherwise provided," McLaren "was at all relevant times acting with the assent, for the benefit, and under the control of Conflict." *Id.* ¶ 8. Doe was a Conflict employee. *Id.* ¶ 46.[1]

Jacobson is a Kansas resident who was looking to retain a private investigator in the winter of 2021. *Id.* ¶¶ 6, 10. Jacobson's public relations provider, Victoria Pressley, recommended that Jacobson hire McLaren to conduct private investigative work. *Id.* ¶¶ 11–14.[2] McLaren briefly performed "certain investigative functions" for Jacobson before suggesting that she hire Stephen Komorek, a Conflict employee, for her future private investigative needs. *Id.* ¶¶ 15–17, 22.

On March 2, 2021, Jacobson and Conflict signed the Contract, which Conflict drafted, whereby Conflict agreed to investigate an individual (the "Target"). *Id.* ¶¶ 18–19, 33.[3] The Contract contained a confidentiality clause providing:

> [Y]our engagement of Conflict [] and all information relating to or arising out of your engagement is subject to the attorney-client privilege and attorney work product doctrine to the maximum extent allowed by law. . . . [Y]our relationship with Conflict [] will be *confidential and privileged* and all documents and communications related to your case will be treated as such.

Doc. 34-1 at 4 (emphasis added). The Contract defined Conflict to include its private investigators, detectives, representatives, and staff. *Id.* Pursuant to the Contract, Jacobson paid Conflict $1.8 million for investigative services rendered over a period of approximately one year. Doc. 31 ¶ 21; *see also id.* ¶¶ 18, 22.[4]

---

[1] The amended complaint alleges that Doe is a resident of either the United Kingdom or North Carolina. Doc. 31 ¶ 3. No further description of Doe is provided in the amended complaint.

[2] The amended complaint is silent as to whether, at that point, Pressley was aware of any information related to the investigation apart from the fact that Jacobson required a private investigator. Doc. 31 ¶¶ 11–14.

[3] Neither the Target's identity nor the reason for the investigation is provided in the amended complaint.

[4] The amended complaint does not describe the precise nature of the services that Conflict conducted for Jacobson.

McLaren subsequently learned the Target's identity, the amount Jacobson had paid Conflict to investigate the Target, and the identities of the investigators on the case (the "Confidential Information"). *Id.* ¶¶ 23, 25. McLaren divulged the Confidential Information to Pressley and divulged the existence of the investigation to the Target. *Id.* ¶¶ 28, 40. Under the Contract, McLaren and Pressley were not permissible recipients of the Confidential Information. *Id.* ¶¶ 26–27. Jacobson alleges that Doe participated in this leak of information and that Conflict breached the Contract by virtue of the unauthorized disclosures. *Id.* ¶¶ 9, 38. She also alleges that the Target's awareness of the investigation increased investigative costs. *Id.* ¶ 41.

On January 19, 2022, the Target emailed Jacobson's husband (the "Email"). Doc. 34-2 at 2.[5] Jacobson alleges that Conflict and McLaren encouraged the Target to do so and that they provided the Target with information to include in the Email. Doc. 31 ¶ 29. The Email explains that the Target had a romantic relationship with Jacobson from 2018 until they broke up in December 2020. Doc. 34-2 at 1–2. The Email then describes a series of encounters that the Target had with private investigators between March 2021 and January 2022. *Id.* at 2–7. For example, the Target and his friends spotted individuals following and photographing them; received envelopes with pictures of themselves; and discovered articles accusing them of theft, selling drugs, and engaging in prostitution and sex trafficking. *Id.* The Target and his girlfriend also reportedly observed posters displayed outside their apartments suggesting that the Target and one of his friends were engaging in human trafficking. *Id.* at 6–7. These interactions prompted the Target to contact the police on multiple occasions. *Id.* Throughout this time, the Target had sporadic communications with Jacobson. *Id.* at 2–7. The Email states that all these events point to Jacobson "hiring private investigators to stalk and harass me . . . and others." *Id.* at 2. Jacobson alleges that this communication was humiliating to her and

---

[5] As set forth in greater detail below, the Court assumes without deciding that it may consider the Email as integral to the amended complaint.

3

that she suffered extreme emotional distress due to the involvement of her family.  Doc. 31 ¶¶ 30, 41.

Komorek's employment with Conflict ended on February 25, 2022. *Id.* ¶ 22.  He started a new private investigative company, which Jacobson indicated that she would retain. *Id.* ¶¶ 1, 34.  Jacobson alleges that her decision to continue working with Komorek prompted Conflict to react with malice toward both her and Komorek. *Id.*

Also on February 25, 2022, McLaren and Pressley confronted Jacobson and claimed they were entitled to a portion of the funds Jacobson had paid to Conflict. *Id.* ¶¶ 23–24.  In doing so, they expressed their knowledge of the Confidential Information. *Id.* ¶ 25.  Jacobson allegedly incurred legal fees repelling their wrongful pursuit of such compensation. *Id.* ¶ 41.

### B. Procedural History

Jacobson filed the initial complaint on November 30, 2022, alleging breach of contract against Conflict, tortious interference with contract against McLaren and Doe, and negligence against McLaren, Doe, and Jane Doe.  Doc. 1.  On February 9, 2023, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Doc. 27.  On February 28, 2023, Jacobson filed an amended complaint that abandoned her negligence claims and released Jane Doe as a defendant but otherwise maintained the claims against Conflict, McLaren, and Doe.  Doc. 31.  With the filing of the amended complaint, the Court denied Defendants' motion to dismiss the original complaint as moot on March 8, 2023.  Doc. 32.

On March 28, 2023, Defendants moved to dismiss the amended complaint under Rule 12(b)(6), asserting that Jacobson fails to state a claim for either breach of contract or tortious interference.  Doc. 33.[6]

---

[6] The parties agree that New York law applies to both claims.

## II. LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

### A. The Email

As a preliminary matter, Defendants urge the Court to consider the Email the Target sent to Jacobson's husband on January 19, 2022. Doc. 34 at 5–6. As described above, the Email outlines a series of interactions between the Target and investigators

5

from March 2021 to January 2022.  Doc. 34-2 at 2–7.  Defendants claim that the Email proves that the Target discovered the existence of the investigation on his own, without any disclosure by McLaren.  Doc. 34 at 4–5.  Therefore, Defendants conclude that any damages that resulted from the Target learning of the existence of the investigation could not have been caused by any alleged breaches of the confidentiality clause.  *Id.* at 5.

In deciding a Rule 12(b)(6) motion, a court is "normally required to look only to the allegations on the face of the complaint."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, the court may also consider documents that are:  (1) attached to the complaint; (2) incorporated by reference in the complaint; or (3) integral to the complaint.  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  The Email was not attached to the amended complaint, and its contents are not specifically set forth.  However, Defendants argue that the Email is incorporated by reference in or integral to the amended complaint based on the following paragraphs:

> 28.  In receipt of the [Confidential Information], Mr. McLaren informed the New York [T]arget of the investigation that indeed Ms. Jacobson was investigating him.
>
> 29.  On information and belief, Conflict [] and/or Mr. McLaren persuaded the [T]arget of the investigation to contact Ms. Jacobson's husband, and fed the [T]arget with information to include in such communication.
>
> 30.  The [T]arget of the investigation followed suit:  he contacted Ms. Jacobson's husband and made defamatory and humiliating allegations about her and included contents that on information and belief had been fed to him as set forth above.

Doc. 31 ¶¶ 28–30.  Defendants contend that in these paragraphs, Jacobson "explicitly refers to and relies upon" the Email as the basis of her claims that Defendants breached the confidentiality clause and caused her resulting damages.  Doc. 38 at 2.  Jacobson responds that the amended complaint "scarcely mentions the communication" and "never once identif[ies] the communication [at] issue as an e-mail."  Doc. 35 at 8.  Therefore,

6

Jacobson concludes that the Email is neither incorporated by reference in nor integral to the amended complaint. *Id.*

To incorporate a document by reference, the complaint "must make a clear, definite and substantial reference" to the document. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). This requires more than "[a] mere passing reference or even references," *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011), or a "limited quotation," *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) (finding that district court erred in relying on several extrinsic documents that were briefly quoted); *see also Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (concluding that documents were not incorporated by reference where amended complaint "merely discussed these documents and presented short quotations from them"). Even if the referenced document is relevant, the court may not consider it based on a plaintiff's "limited and indirect citations." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 299 n.39 (S.D.N.Y. 2008). However, explicit citations to specific provisions of a document are sufficient to incorporate that document by reference. *Wawa, Inc. v. Mastercard Int'l, Inc.*, No. 22 Civ. 03186 (NSR), 2023 WL 6147177, at *5 (S.D.N.Y. Sept. 20, 2023).

Here, in two paragraphs of the amended complaint, Jacobson mentions a communication between the Target and her husband that made "defamatory and humiliating" allegations and contained details of her investigation. Doc. 31 ¶¶ 29–30. However, the amended complaint does not otherwise discuss the nature of the communication or its contents, and there is no clear and explicit citation to the Email. *Cf. Wawa*, 2023 WL 6147177, at *5. Accordingly, the Court finds that the Email is not incorporated by reference in the amended complaint.

"Where a document is not incorporated by reference, the court may [nevertheless] consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *AECOM*, 19 F.4th at 106 (internal quotation

7

marks and citation omitted). For a document to be integral, the complaint must do more than merely mention it. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559–60 (2d Cir. 2016) (finding that district court erred when it considered deposition testimony from a prior lawsuit because complaint did not rely on the testimony's terms and effects). Most commonly, courts find documents to be integral if they are "contract[s] or other legal document[s] containing obligations upon which the plaintiff's complaint stands or falls." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). But courts may also consider non-legal documents integral if they are "necessary predicate[s]" for the claim. *BonWorth, Inc. v. Runway 7 Fashions, Inc.*, No. 17 Civ. 9712 (PAE) (BCM), 2023 WL 5016321, at *9 (S.D.N.Y. June 20, 2023), *report and recommendation adopted*, 2023 WL 4421871 (S.D.N.Y. July 10, 2023).

Jacobson contends that the Email is not integral to the amended complaint because none of the essential elements of her claims rely on it. Doc. 35 at 8. However, Jacobson alleges that the damages she suffered from Conflict's breach of contract include her emotional distress due to the involvement of her family members. Doc. 31 ¶ 41. As a result, one element of Jacobson's breach of contract claim necessarily depends on the fact that the Target contacted Jacobson's husband and included details of the investigation along with "defamatory and humiliating" allegations about her. *Id.* ¶ 30. This indicates that the Email's allegations and the effect they caused on Jacobson are critical prerequisites to her claim for emotional distress damages. *See BonWorth*, 2023 WL 5016321, at *9.

Even if a document is integral to the complaint, a court "still may not consider it on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document' or 'the relevance of the document.'" *DeLuca*, 695 F. Supp. 2d at 60 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). Jacobson argues that the contents of the Email were fed to the Target by Conflict and McLaren and that they may have provided "assistance or prodding." Doc. 35 at 10; *see also* Doc. 31 ¶¶ 29–30. But she

8

does not assert that the Email itself is inauthentic or irrelevant to her claims. *See Donoghue v. Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *6 (S.D.N.Y. Aug. 8, 2022) (finding that court could consider integral extrinsic evidence where plaintiff did not dispute its authenticity or relevance).

Finally, for the reasons detailed below, the Email does not affect the Court's ultimate conclusion that the amended complaint adequately states a claim for breach of contract and tortious interference. Accordingly, the Court assumes without deciding that it may consider the Email as integral to the amended complaint. In doing so, however, the Court may consider the Email "only to determine what the [Email] stated, and not to prove the truth of [its] contents." *See Roth*, 489 F.3d at 509 (emphasis omitted) (internal quotation marks and citation omitted).

### B. Breach of Contract

To state a claim for breach of contract against Conflict under New York law, Jacobson must allege that: (1) the Contract existed; (2) she performed her end of the Contract; (3) Conflict breached the Contract; and (4) she suffered damages as a result of that breach. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). At this stage, there is no dispute that Jacobson and Conflict entered into the Contract, Doc. 34-1, and that Jacobson paid Conflict $1.8 million pursuant to the Contract, Doc. 31 ¶ 21. According to Defendants, however, Jacobson insufficiently alleges that Conflict breached the Contract or that she suffered damages. Doc. 34 at 4–9.

*1. Breach*

The confidentiality clause of the Contract provided that Jacobson's relationship with Conflict, as well as "all documents and communications" related to Jacobson's case, would be treated as "confidential and privileged." Doc. 34-1 at 4. According to Jacobson, Conflict breached this provision on multiple occasions. First, she asserts that that Conflict disclosed the Confidential Information to McLaren. Doc. 35 at 11. Second,

9

Jacobson raises an alternative theory that McLaren, as Conflict's agent, disclosed the Confidential Information to Pressley. *Id.* at 13. Finally, Jacobson argues that Conflict and McLaren informed the Target of the investigation and persuaded him to send the Email. *Id.* at 3; *see also* Doc. 31 ¶¶ 28–30, 40.

Defendants argue that Jacobson "does not come close to sufficiently alleging that Conflict breached any confidentiality obligations" because Jacobson fails to specify "when or how" any of the breaches occurred. Doc. 34 at 9 (emphases omitted). In addition, Defendants contend that Conflict's alleged disclosure to McLaren was not a breach because McLaren was Conflict's "employee and contractor" or its agent, which made him a permissible recipient of the confidential information. *Id.* at 7. Defendants also assert that Jacobson fails to allege what the nature of McLaren's disclosures to Pressley were and that Jacobson herself disclosed the Confidential Information to Pressley when she sought a recommendation for a private investigator. *Id.* at 7–8. Finally, Defendants claim that neither Conflict nor McLaren made any disclosures to the Target because the Target learned of the existence of the investigation on his own—as described in the Email. *Id.* at 4–6.

    a. *Specificity*

At this stage, Jacobson need only "identify, in non-conclusory fashion, the specific terms of the contract that [Conflict] has breached." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015); *see also Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) ("[T]he complaint must identify the contractual obligation that was breached and allege how.").

The amended complaint satisfies this standard by identifying the term Conflict allegedly breached (the confidentiality clause), Doc. 31 ¶ 38, and how it was breached—through disclosure of the Confidential Information to McLaren, Pressley, and the Target, *id.* ¶¶ 25, 39–40. No more specificity is required to survive a motion to dismiss. *See, e.g.*, *Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 12 Civ. 6255 (CS), 2013 WL 4860585, at

10

\*5 (S.D.N.Y. Sept. 12, 2013) (finding breach of contract claim adequately pled where plaintiff identified specific contract terms that were breached); *see also Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) (finding that plaintiff sufficiently pled breach of contract claim by alleging existence of contract and terms that defendant breached).

    b. *Disclosure to McLaren*

Next, Defendants argue that Conflict did not actually disclose any confidential information. Doc. 34 at 7. The amended complaint alleges that McLaren, "except as otherwise provided, was at all relevant times acting with the assent, for the benefit, and under the control of Conflict." Doc. 31 ¶ 8. The Contract, moreover, defines "Conflict" to include the company's detectives, representatives, and staff. Doc. 34-1 at 4. Defendants assert that McLaren was "a Conflict employee and contractor." Doc. 34 at 7. As a result, they reason, Conflict could not have made any unauthorized disclosures to McLaren because the company "had a right to disclose information to its own employees." *Id.*

Drawing all reasonable inferences in Jacobson's favor, the Court cannot agree with Defendants' assertion that Conflict simply disclosed information to its own employee. The amended complaint alleges that McLaren "was an agent of Conflict [] in certain capacities" but "was not an employee of Conflict [] more generally." Doc. 31 ¶ 39. It further alleges that McLaren "was not acting as an agent of Conflict [] when the company made the Unauthorized Disclosures to him." *Id.* At this stage, therefore, it is at least plausible that McLaren was not acting as an agent or employee of Conflict when the disclosures occurred. *Cf. Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 516 (S.D.N.Y. 2022) (noting that "where the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues of fact and are not properly the basis of a motion to dismiss" (citation omitted)). The Court can plausibly

11

infer that McLaren was not authorized to receive the Confidential Information—and that Conflict's disclosures to him therefore constituted a breach.[7]

    c. *Disclosure to Pressley*

Defendants also contend that Conflict did not make any unauthorized disclosures to Pressley. Doc. 34 at 7–8. Specifically, they argue that McLaren's alleged disclosures to Pressley are no different from those that Jacobson had already made to Pressley. *Id.* On this point, the amended complaint alleges that Pressley provided public relations services to Jacobson, Jacobson asked Pressley to recommend a private investigator, and Pressley suggested McLaren. Doc. 31 ¶¶ 11–13. Defendants take these allegations to mean that Pressley was aware of the investigation's details based on the information that she received from Jacobson. Doc. 34 at 8.

That conclusion reads too much into the relevant allegations. To be sure, the amended complaint indicates that Pressley knew Jacobson was looking for a private investigator. Doc. 31 ¶¶ 12–13. But it further asserts that Pressley learned the identity of the Target, the amount of money Jacobson paid Conflict to investigate the Target, and the identities of the case investigators from McLaren. *Id.* ¶¶ 25, 40. Nothing in the amended complaint suggests that Jacobson herself disclosed any of those details to Pressley.

    d. *Disclosure to the Target*

Finally, Defendants argue that McLaren did not disclose the investigation to the Target because the Email suggests that he discovered its existence on his own—or from Jacobson. Doc. 34 at 4–6. Defendants rely on the following statements, among others, in the Email:

- "Below is an article which is how we discovered who [the private investigator] was. . . ."

---

[7] In any event, Jacobson's breach of contract claim would survive even if McLaren was an agent of Conflict. If McLaren was Conflict's agent, Jacobson alleges, then Conflict breached the Contract when McLaren disclosed the Confidential Information to Pressley and the existence of the investigation to the Target. Doc. 31 ¶ 40.

- "[Jacobson] was really talking to the private investigators surveilling us and sent me the text by mistake. . . ."
- "As you can see, all of the events over the past year point to [Jacobson]."

*Id.* at 5–6 (first alteration and omissions in original) (emphases omitted); *see* Doc. 34-2. According to Defendants, these statements demonstrate that Jacobson inadvertently alerted the Target to the investigation. Doc. 34 at 5–6.

Again, Defendants' argument is not persuasive. The amended complaint alleges that McLaren informed the Target of the investigation—and that Conflict and McLaren gave the Target information to include in the Email. Doc. 31 ¶¶ 28–29. At this stage, those allegations must be accepted as true. While the Court may consider the statements in the Email, "documentary evidence does not trump a plaintiff's contrary factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 512 (S.D.N.Y. 2012); *see also Roth*, 489 F.3d at 511 (explaining that extrinsic documents "may properly be considered only for what they contain, not to prove the truth of their contents" (internal quotation marks omitted)). Defendants' assertion that Jacobson inadvertently alerted the Target to the investigation assumes that the statements in the Email are true. But that is precisely the kind of assumption that the Court cannot make in considering the Email. *See, e.g., Ganske v. Mensch*, 480 F. Supp. 3d 542, 546 (S.D.N.Y. 2020) ("Courts are permitted to take judicial notice of documents that are integral to the complaint . . . for the limited purpose of noting what the documents state, rather than to prove the truth of their contents." (internal quotation marks and citation omitted)).

\*   \*   \*

The amended complaint sufficiently alleges unauthorized disclosures of the Confidential Information to McLaren and Pressley and of the existence of the investigation to the Target. At this stage, Jacobson has satisfied the breach requirement.

### 2. *Damages*

Jacobson alleges three forms of damages that resulted from the alleged breaches of the confidentiality clause. First, Jacobson asserts that the disclosure of the Confidential Information to McLaren and Pressley required her to incur legal fees in warding off their claims to compensation. Doc. 31 ¶ 41. Second, Jacobson alleges that McLaren's disclosure of the existence of the investigation to the Target resulted in increased investigative costs. *Id.* Finally, Jacobson claims that the Email to her husband caused her extreme emotional distress. *Id.*

Defendants counter that Jacobson's alleged damages are conclusory and that she fails to demonstrate how Conflict's alleged breaches caused her to sustain damages. Doc. 34 at 8–9. Jacobson replies that she was not required to offer specific proof of causation. Doc. 35 at 5–6. Instead, Jacobson asserts that the amended complaint adequately explains how her damages were "plausible outgrowths" of Conflict's alleged breaches of the confidentiality clause. *Id.* at 6.

To state a claim for breach of contract, Jacobson must do more than simply allege that the breach "caused damages." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11 Civ. 1534 (JG) (JMA), 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011). Instead, she must allege "particular facts as to how she was damaged." *Int'l Bus. Machs. Corp. v. Dale*, No. 11 Civ. 951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). However, Jacobson need not have specified the precise measure of her damages to survive this motion. *See LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 516 (S.D.N.Y. 2015); *see also Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15 Civ. 2044 (AJN), 2016 WL 205445, at *7 (S.D.N.Y. Jan. 15, 2016) ("The precise magnitude of damages proximately caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage."). So long as Jacobson alleges "factual content that allows the court to draw the reasonable inference that [she] suffered

14

damages as a result of the breach," she has sufficiently pled damages. *See Errant Gene*, 2016 WL 205445, at *7 (internal quotation marks and citation omitted).

Here, Jacobson has done exactly that. She alleges that Conflict's breaches of the confidentiality clause caused McLaren and Pressley to learn the Confidential Information, which they weaponized to attempt to extract money from Jacobson, causing her to incur legal fees to repel their efforts. Doc. 31 ¶¶ 23–25, 41. Jacobson also alleges that McLaren's disclosure of the investigation to the Target was a breach, which caused her to sustain increased investigative costs. *Id.* ¶¶ 40–41. Finally, Jacobson alleges that McLaren's disclosure of the investigation to the Target led to the Email the Target sent her husband, which caused her extreme emotional distress. *Id.* ¶¶ 28–30, 41. Even if the precise magnitude of those damages may not be readily ascertained at this juncture, Jacobson has sufficiently claimed that the breaches caused her damages to survive the motion to dismiss. *See LivePerson*, 83 F. Supp. 3d at 516 ("While Plaintiff does not itemize the client relationships harmed and does not estimate damages beyond the assertion that they are substantially greater than the federal amount-in-controversy requirement, the [complaint] provides adequate notice to Defendant on the issue of damages."). In other words, Jacobson has satisfied her burden with respect to damages by plausibly alleging that Conflict's breaches led to legal fees, increased investigative costs, and emotional distress. *See Comfort Inn*, 2011 WL 5238658, at *8 ("Although [plaintiff's] allegation does not fill in all the blanks as to how [defendant's] alleged breach resulted in the damages it asserts, it adequately alleges damages resulting from [defendant's] purported breach.").[8]

---

[8] Jacobson notes that the amended complaint seeks rescission of the Contract as an alternative remedy, which she says should allow her claim to survive even if "contract damages were truly mitigated to the extent the Defendants claim they should be." Doc. 35 at 7; *see* Doc. 31 ¶ 43. Because the Court concludes that Jacobson has adequately alleged damages, it need not address this alternative theory.

### C. Tortious Interference with Contract

To state a claim for tortious interference with contract against McLaren and Doe, Jacobson must allege that: (1) the Contract existed between her and Conflict; (2) McLaren and Doe knew about the Contract; (3) McLaren and Doe intentionally and without justification induced Conflict to breach the Contract; (4) Conflict breached the Contract; and (5) she suffered damages. *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 336 (S.D.N.Y. 2012). Additionally, tortious interference must involve "a *non-party* improperly interfering with a contract between two contracting parties." *Scuderi v. Springer*, No. 03 Civ. 2098 (RO), 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004); *see also IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009) ("[T]he general rule is that a claim for tortious interference will lie only against a stranger who improperly interferes with a contract between two contracting parties."). An agent of one of the contracting parties is generally not a stranger to the contract. *See Minetos v. City Univ. of N.Y.*, 925 F. Supp. 177, 187–88 (S.D.N.Y. 1996) ("[A]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he [or she] is acting on behalf of his principal and within the scope of his authority." (alteration in original) (citation omitted)). Additionally, an employee of a party is not a stranger to the contract unless the employee "has exceeded the bounds of his or her authority." *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996).

As previously discussed, Jacobson has sufficiently alleged that a contract existed, which Conflict breached, causing her to sustain damages. In the amended complaint, Jacobson also alleges that McLaren and Doe were aware of the Contract because McLaren referred Jacobson to Conflict in the first place and Doe was a Conflict employee. Doc. 31 ¶¶ 17, 46. Additionally, Jacobson asserts that McLaren and Doe "intentionally induced" Conflict to breach the confidentiality clause to "penalize" Jacobson for her loyalty to Komorek. *Id.* ¶¶ 47–48.

Doe was Conflict's employee. *Id.* ¶ 46. Accordingly, he will not be considered a stranger to the Contract unless he exceeded the scope of his authority when he "participated in the unauthorized leak of information." *Id.* ¶ 9; *see Finley*, 79 F.3d at 1295. At this stage, Doe's identity and his role at Conflict remain unknown, so the Court cannot determine whether he exceeded his authority.[9]

As for McLaren, Defendants argue that he could not have tortiously interfered with the Contract because he was Conflict's agent. Doc. 34 at 10–11. Defendants again point to the amended complaint's allegations that McLaren was "acting with the assent, for the benefit, and under the control of Conflict." Doc. 31 ¶ 8; *see also id.* ¶ 23 (alleging that McLaren, "acting outside of his capacity as an agent of Conflict," attempted to procure funds from Jacobson). As noted above, however, the amended complaint actually states that McLaren, "*except as otherwise provided*, was at all relevant times acting with the assent, for the benefit, and under the control of Conflict." *Id.* ¶ 8 (emphasis added). And it goes on to allege that McLaren was, in fact, not acting as an agent when he received the Confidential Information. *Id.* ¶ 39 (alleging that McLaren was an agent of Conflict "in certain capacities" but that he "was not an employee of Conflict [] more generally, and he was not acting as an agent of Conflict [] when the company made the Unauthorized Disclosures to him"). Drawing all reasonable inferences in Jacobson's favor, the Court cannot conclude at this point that McLaren was a stranger to the Contract, so the tortious interference claim may proceed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. The parties are directed to appear for a status conference on April 19, 2024, at 2:30 p.m. at the

---

[9] The Court notes, however, that if Jacobson wishes to maintain her claims against Doe, she must "take reasonable steps to ascertain [his] identit[y] through discovery" and then amend the operative pleading to properly name him as a party. *See Foskey v. Northrup*, No. 20 Civ. 0504 (LEK) (TWD), 2021 WL 1146217, at *5 (N.D.N.Y. Mar. 25, 2021).

17

Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, Courtroom 619.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 33.

It is SO ORDERED.

Dated:   March 29, 2024
         New York, New York

EDGARDO RAMOS, U.S.D.J.